BOWEN ET AL. *v.* W. O. EATON & CO. ET AL.

[No. 6,494. Filed November 19, 1909. Rehearing denied March 17, 1910. Transfer denied May 31, 1910.]

1. PARTIES.—*Contractors.*—*Sureties.*—*Distribution of Funds.*—*Assignments.*—*Highways.*—Where contractors agreed to build a certain line of road, but failed, and through a mutual agreement with such contractors and the board of commissioners the sure-

ties agreed to complete the road, paying to the contractor the surplus after paying all of their expenses, such contractors are proper parties defendant to a cross-complaint by such sureties asking that the amount received be used to discharge the expenses incurred in completing the road, the new agreement being in the nature of an assignment of the original contract. p. 71.

2. PLEADING.— Cross-Complaint.— Sufficiency.— Asserting Right to Fund.—A cross-complaint asserting a right to the fund in controversy should ordinarily allege that defendants' claim thereto is unfounded. p. 73.

3. PLEADING.—Demurrer.—Erroneous Overruling of.—When Prejudicial.—The overruling of a demurrer is not ground for the reversal of a judgment, where it appears from the whole record that the merits of the cause have been fairly determined (§350 Burns 1908, §345 R. S. 1881). p. 73.

4. CONTRACTS.—Sureties.—Creditors.— Funds.— Adverse Claims.— Cross-Complaint.—Demurrer.—Where certain creditors of contractors filed a complaint to recover a fund belonging to such contractors, asserting that defendants' claim thereto was unfounded, and another creditor, on his behalf, by a cross-complaint made a similar claim, the overruling of a demurrer to a cross-complaint by the contractors' sureties asking that they be decreed the owners thereof, but failing to allege that the cross-defendants' claims thereto were unfounded, constitutes harmless error. p. 73.

5. APPEAL.— Harmless Error.— Overruling Demurrer.— When Shown Harmless by Special Findings.—In determining whether the alleged error in overruling a demurrer was harmless, the court may consider the special findings, but essential omitted averments of a complaint cannot be supplied thereby. p. 74.

6. TRIAL.—Issues.—What Are.—The issues in a case are the points in dispute on which parties put their case to a trial. p. 75.

7. CONTRACTS.— Funds Arising from.— Adverse Claims.— Issues.— Where the sureties of contractors and two sets of creditors of such contractors are contesting the ownership of the funds arising from the contractors' contract, the issue is the question of ownership, and any evidence tending to throw light upon such question is admissible. p. 75.

8. EVIDENCE.—Incompetent.—Rebuttal.—Title to Fund.—Sureties. —Creditors.—Estoppel.—Where creditors of contractors introduce incompetent evidence showing the whole amount of money received by sureties of such contractors, who completed the contract, it is competent for such sureties, claiming the fund in dispute, to show the application of such money received, and the plaintiffs having introduced such incompetent evidence are estopped to complain of such evidence in rebuttal thereof. p. 76.

9. APPEAL.—Harmless Error.—Wrongful Admission of Evidence. —Where creditors of contractors sue the sureties of such con-

tractors, asserting title to a certain fund due for the completion of such contractors' contract, the wrongful admission of evidence showing the comparative amount of work done by such contractors and by their sureties, is harmless, where the evidence shows that the result must have been the same.  p. 77.

10. CONTRACTS.—*Gravel Roads.*—*Construction of.*—*Failure of Contractors.*—*Reletting.*—*Creditors.*—Where gravel road contractors failed and their sureties agreed with the board of commissioners to complete the work, paying their expenses from the contract price and paying the balance, if any, to the contractors, creditors of such contractors have no rights to the funds received for the construction of the road, until the sureties are fully paid for their expenses of construction, including the necessary cost of superintendence and attorneys' fees.  p. 78.

11. APPEAL.—*Failure to Assign Cross-Errors.*—Appellees can present no questions decided against them unless cross-errors are assigned.  p. 79.

From Clinton Circuit Court; *Samuel R. Artman,* Special Judge.

Suit by Abner T. Bowen and others against W. O. Eaton & Co. and others.  From the decree entered, plaintiffs appeal.  *Affirmed.*

*L. D. Boyd, George W. Julien, John L. Hanna* and *Gus A. Hall,* for appellants.

*Edwin P. Hammond, William V. Stuart, Allison E. Stuart, Dan W. Simms* and *N. J. Howe,* for appellees.

HADLEY, C. J.—This is a suit on behalf of appellants on four promissory notes and proceedings in attachment against W. O. Eaton & Co., William O. Eaton and Sheldon S. Eaton, and in garnishment against the County of Carroll, as debtors of W. O. Eaton & Co., William O. Eaton and Sheldon S. Eaton.  There was a special finding of facts and conclusions of law stated thereon.

It appears from the special finding of facts that William O. Eaton and Sheldon S. Eaton, in 1903, 1904 and 1905, were doing business under the firm name of W. O. Eaton & Co., and under such firm name, in 1903, entered into a contract for the construction of the Madison township gravel

road, nineteen and one-fourth miles in length, in Carroll county, for $28,800. Estimates of the work done were to be made every thirty days, or upon the completion of any portion thereof, and eighty per cent of such estimates was to be paid as the work progressed. The work was to be completed by January 1, 1905, and the contract stipulated that in the event said contractors failed so to complete said work the board of commissioners, at its option, was authorized to complete it according to plans and specifications, and charge the excess of the cost over the contract price, if any, to said contractors. Contemporaneously with this contract, they gave a bond for its faithful performance, which bond was signed by appellees, W. O. Eaton & Co., William F. Frey, John C. Frey, S. O. Taylor and S. S. Eaton. Said W. O. Eaton & Co. entered upon the work under their contract. On August 7, 1905, said contractors had completed about six miles of said road and had worked on twelve and one-fourth miles of said road, and on said date said contractors abandoned said contract and refused to complete it, and said bondsmen entered into an agreement with the board of commissioners for the completion of said road in accordance with the plans and specifications. By said agreement said commissioners were requested to pay all money, thereafter due for the construction of said road, to appellee Russell K. Bedgood, who was to pay out of said money all expenses theretofore or thereafter incurred in the construction of said road, the surplus remaining after such payment to be paid over to W. O. Eaton & Co. or their assigns. By said agreement the parties thereto reserved all legal rights as between themselves, or as between the sureties on the bond, and W. O. Eaton & Co. and the board of commissioners. Prior to the agreement last mentioned, the board of commissioners had paid to W. O. Eaton & Co. for work done on said contract, the sum of $15,560, leaving unpaid on the contract price the sum of $13,240. After the agreement last mentioned, appellees Frey, Frey & Taylor took charge of the road, furnished the

labor and material, and completed the road in accordance with the plans and specifications, and it was duly accepted by the board, and they also repaired a portion upon which W. O. Eaton & Co. had done work prior to said agreement, which work was necessary in order to procure its acceptance by the board. During the construction of the road, under the last agreement, the commissioners paid out• to Russell K. Bedgood, for W. O. Eaton & Co., the sum of $9,896. Under said agreement said Frey, Frey & Taylor paid out upon debts incurred by W. O. Eaton & Co., prior to August 7, 1905, for labor and material used in the work done by them prior to said date, $4,177.36, for labor and material used in the repair of the work done by W. O. Eaton & Co., in order to secure its acceptance, $546.31, for the payment for labor and material used upon that part of the road wholly constructed after August 7, 1905, $7,912.53, making a total expended by said bondsmen of $12,636. There were outstanding claims, for labor and material used, in the sum of $302.75. On November 14, 1905, said board of commissioners made an allowance in the sum of $3,344 to said Bedgood for W. O. Eaton & Co., under the last agreement, for the construction and completion of three and one-fourth miles of road wholly constructed by said bondsmen after August 7, 1905, which sum was garnisheed in this proceeding, and was ordered paid to the sheriff of Carroll county in response thereto.

It also appears that on March 6, 1905, W. O. Eaton & Co. made an assignment to appellants of all amounts due to said company, or that might become due for work theretofore done, or that might thereafter be done, as collateral to secure $500 lent by said appellants to said W. O. Eaton & Co., said assignment being subject to an assignment to Joseph E. Ruffing; that on June 10, 1905, said W. O. Eaton & Co. executed to appellants an order on the auditor of Carroll county for the first $2,600 due on an estimate then to be made; that on February 8, 1905, said W. O. Eaton & Co. executed to Joseph E. Ruffing an instrument in writing, whereby they

assigned to said Ruffing all their right, title and interest in and to their said contract to said board of commissioners, and authorized said Ruffing to collect from the board of commissioners the sum of $1,300; that on November 7, 1905, said assignments were filed as public documents in the auditor's office of said county; that appellees Frey, Frey & Taylor did not have knowledge of the contents of said assignments at the time they entered into the contract with the board of commissioners on August 7, but did have notice that appellants and Ruffing had some claim against W. O. Eaton & Co.

By their pleadings, appellants and appellee Ruffing seek to have the $3,344, allowed by the board of commissioners to Frey, Frey & Taylor, that is now in the hands of the sheriff, applied to the liquidation of the various debts owing to them by W. O. Eaton & Co.; while Frey, Frey & Taylor seek to have said sum applied to the payment of debts contracted by them in the construction of the road. The court gave judgment for appellants and appellee Ruffing for the amount of three notes, and adjudged that appellees Frey, Frey & Taylor were entitled to have $2,644 of the money in the hands of the sheriff applied to the payment of their claims, and that $700 thereof should be applied to the payment of appellants' and appellee Ruffing's claims.

Appellants' complaint is in five paragraphs, based upon promissory notes. In each, the contract of W. O. Eaton & Co. with the board of county commissioners, for the construction of the Madison township gravel road, is set up, the assignment to appellants is averred, and it is alleged that the amount of $3,344 in the hands of the commissioners is due on said contract. The prayer is for judgment for the amount of the notes and that said board of commissioners be ordered to pay to appellants on said contract said sum in its possession. Each of said paragraphs also avers that appellees claim some interest in said fund, and they were made parties to answer as to such interest. Appellee Ruffing filed a cross-complaint against his coappellees and appellants, set-

ting up the fact that he was surety for W. O. Eaton & Co. upon the note for $1,300 sued upon by appellants; that at the time of the execution of said note W. O. Eaton & Co. assigned to him, to protect him, all their right, title and interest in their contract with the board of commissioners, with authority to collect a sufficient sum on said contract from said board of commissioners, and to apply it to said note; that said W. O. Eaton & Co. were wholly insolvent, and that said assignment was prior in point of time and superior in point of fact to any claim of any of the other appellees. Appellees Frey, Frey & Taylor filed a cross-complaint, making their coappellees and appellants parties defendant thereto. In this cross-complaint, said Frey, Frey & Taylor set up the contract of W. O. Eaton & Co. with the board of commissioners for the construction of said road, their suretyship on the bond for its faithful performance, the abandonment of the work by W. O. Eaton & Co., and the subsequent agreement with the board of commissioners and said Frey, Frey & Taylor for the latter to complete the construction of the road and receive the money due therefor under the contract, and averred that the fund in controversy was for a portion of the road wholly constructed by said bondsmen, and that it was due to them to compensate them for money expended in the construction of said road under said contract. To this cross-complaint appellants filed a demurrer (1) for defect of parties plaintiff, and (2) for want of sufficient facts. .

The overruling of these demurrers is assigned as error.

It is urged against the cross-complaint of Frey, Frey & Taylor that there is a defect of parties plaintiff, in that Sheldon S. Eaton and William O. Eaton should have

1.    been named as parties plaintiff. William O. and Sheldon S. Eaton comprised the firm of W. O. Eaton & Co. They were the original contractors and principals in the bond in which Frey, Frey & Taylor were sureties. Cross-complainants are seeking to secure the application of the fund to the payment of obligations created by them under a

subsequent agreement with the board of commissioners, in which said William O. and Sheldon S. Eaton joined. By this agreement, however, said Eatons were to receive nothing until after the payment of all claims for expenses created by cross-complainants in the prosecution and completion of the work, and of all claims for labor and materials theretofore created by said Eatons in the construction of said work. The interests, then, of said Eatons in said fund were not identical with those of cross-complainants, but, on the contrary, were in a measure adverse, it being to their interests to see that cross-complainants received no more of the funds than they were entitled to under the agreement, since the less cross-complainants received the more said Eatons would be entitled to.

Furthermore, the second agreement entered into between cross-complainants, the Eatons and the board of commissioners, was in the nature of an assignment by said Eatons to said cross-complainants of so much of the money to be received on the original contract with said board as was necessary to complete said road. The cross-complainants were charged with the whole duty of carrying on the work to completion. They were to make no profits; the profits, if any, were to go to the Eatons. Their interest was to see that cross-complainants fully performed the contract. They were in the position of assignees with a reserved interest. This interest, and the only interest they had, was adverse to the interests of cross-complainants and they were properly made defendants to protect that interest. *Lake Erie, etc., R. Co.* v. *Hobbs* (1907), 40 Ind. App. 511.

It is also urged that the court erred in overruling appellants' demurrer to said cross-complaint, for the reason that it does not state facts sufficient to constitute a cause of action against them; and as a basis of this contention, it is pointed out that it is neither averred that appellants claim some interest adverse to cross-complainants, which is unfounded and without right, nor does said cross-complaint, by

its averments, show that said appellants assert such adverse claim.

It is true, as asserted by appellants, that as a general rule a cross-complaint must show a complete cause of action against the cross-defendants sought to be bound 2. thereby, and that to show such action the cross-complaint must, by averment, show an adverse claim of defendants which is unfounded. *Leach* v. *Rains* (1897), 149 Ind. 152.

But conceding, without deciding, that the demurrers of appellants and appellee Ruffing were erroneously overruled, Is such ruling a reversible error? By §350 Burns 3. 1908, §345 R. S. 1881, it is provided: "No objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appear from the whole record that the merits of the cause have been fairly determined."

The only objection urged against the cross-complaint is that it does not show that appellants and appellee Ruffing were claiming an interest in the fund sought to be 4. subjected to cross-complainants' claim. But appellants had asserted this claim in their complaint, and appellee Ruffing had asserted his claim in his cross-complaint, to each of which appellees Frey, Frey & Taylor had answered by general denial. And said appellees asserted a claim to the same fund and averred facts sufficient to entitle them to receive it, unless appellants or appellee Ruffing could show a superior right by their complaint or cross-complaint respectively. The cross-complaint clearly identified the fund thereby claimed as the same fund as was claimed by appellants in their complaint and by appellee Ruffing in his cross-complaint, and was sufficient to entitle cross-complainants to some relief.

The only issue between the parties was, To whom did the fund belong? Each was affirmatively asserting his exclusive right to it. This presented an equitable controversy. All of the parties were before the court. Each was fully

heard. No evidence was introduced that could not have been introduced if the demurrers had been sustained, and the ruling, if erroneous, is clearly shown to have been harmless. *Duncan* v. *Lankford* (1896), 145 Ind. 145; *State* v. *Hindman* (1903), 159 Ind. 586.

This is especially made apparent upon examination of the finding of facts, to which, under our decisions, in cases

5. like the present, we are permitted to look in determining this question. *Gilliland* v. *Jones* (1896), 144 Ind. 662; *Scanlin* v. *Stewart* (1894), 138 Ind. 574.

A special finding cannot supply essential averments omitted from a pleading, but it may be looked to to ascertain whether errors in rulings on pleadings were harmless. *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202.

The court found specially that appellees Frey, Frey & Taylor had received from the board of commissioners, under their contract of August 7, 1905, the sum of $9,896; that, in addition, they had advanced from their personal funds $2,740.20; that this amount had been expended as follows: $4,177.36 upon debts incurred by W. O. Eaton & Co. prior to August 7, 1905, for labor and materials used in the work on said road; $546.31 for labor and material used in the repair of work done by W. O. Eaton & Co. in order to secure its acceptance; $7,912.53 for labor and material used upon that part of the road wholly constructed after August 7.

The court further found that there were unpaid claims for labor and material used in the construction of said road to the amount of $302.75; that appellees Frey, Frey & Taylor had incurred necessary legal expenses to the amount of $180 in the performance of the work and in securing its acceptance; that said appellees had also incurred an expense in the additional sum of $612.09, in investigating claims, in the payment of them and in securing the acceptance of the work; that if said sums of $302.75, $180 and $612.09 were added to the $2,740.20 advanced by said appellees, and the whole of the sum here in controversy—$3,344—be deducted there-

from, it would still leave a balance of $491.04 of expenses to said appellees unpaid.

It is insisted by appellants and appellee Ruffing that the court's finding with reference to the amounts paid on the debts of W. O. Eaton & Co. incurred prior to August 7, and the amount of unpaid claims and the amount of attorneys' fees and Bedgood's expenses are without the issues and should not be considered, since the cross-complaint makes no averment of such payments. It therefore becomes incumbent upon us to determine what the issues between the parties were.

It is said in the case of *Wolcott* v. *Wigton* (1855), 7 Ind. 44, that the "issues are the points in dispute between the parties on which they put their cause to trial." In the case of *Smith* v. *Town of Ontario* (1880), 4 Fed. 386, it is said: "The matter in issue has been defined in a case of leading authority as 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading.' *King* v. *Case* [1844], 15 N. H. 9."

The issue tendered by the complaint, cross-complaints and answers thereto, was the right to or the ownership of the fund in question, by virtue of the various assignments and contracts, and it would appear that any matter that would tend to cast any light upon the question in controversy and enable the court sitting as a court of equity rightfully to determine to whom the fund belonged should be held to be within the issues.

Appellants, to establish their claim and to meet the issue, introduced as evidence-in-chief the original contract, the bond of appellees, the agreement between appellees and the board of commissioners of August 7, the assignment from the Eatons to appellants, the records of the board of commissioners showing the consideration and acceptance not only of that portion of the road for which the particular fund in controversy was allowed, but also the completion and accept-

ance of other portions of the road completed under the contract of the bondsmen, and also the records of the board of commissioners showing the amount of payments to said bondsmen under their said contract, being the sum of $9,896.

The evidence of these payments could only have been pertinent and competent upon the theory that the bondsmen had been fully paid for the construction of that portion of 8. the road for which they were claiming the fund. The evidence thus introduced in chief by the plaintiff certainly rendered it competent, if not otherwise so, for the bondsmen to show what application had been made of the fund thus allowed them by said board of commissioners. And if they did show, and the court found that they did, that said money had all been expended in strict accordance with the terms of the agreement under which it had been earned, and that there still remained an unpaid balance of expenditure under said contract, in excess of the fund in controversy, they successfully met the contention of appellants and appellee Ruffing, and established the justice of their claim. Whether this evidence was strictly within the issues is of little consequence, since it was brought into the case by appellants, and they cannot now be heard to complain that appellees were permitted to meet the evidence thus presented, or that the court found the facts proved by the evidence thus produced, and considered said facts in stating its conclusions. *Southern Ind. R. Co.* v. *Drennen* (1909), 44 Ind. App. 14.

Our conclusion on the foregoing matters disposes of the questions raised as to the admissibility of the evidence of witnesses John Draper, Alfred Livingston and Russell K. Bedgood as to the amount of work done by Bedgood in repairing old work done by W. O. Eaton & Co., and as to the value of Bedgood's services in constructing the road and paying claims, and as to the payment by said Bedgood of $4,177.36 on old debts of W. O. Eaton & Co. and $180 attorneys' fees.

It is also objected that the court erred in permitting witnesses Livingston and Thompson to testify as to what parts of said road were the most expensive to construct,

9. from which evidence it appeared that the parts constructed by Eaton under the original contract were less expensive than the parts constructed by the bondsmen, the point being made that the questions and answers are incompetent, for the reason that they seek to prove a fact by conclusions and comparisons. Both the questions and the answers are clearly subject to the objection raised, but it is not clear that the cause should on that account be reversed. It is evident that appellants and appellee Ruffing are not entitled to recover on their complaint and cross-complaint, respectively, unless the fund in question, or some portion thereof, is a balance remaining after all expenses of the completion of the road are paid; and the burden was upon appellants and appellee Ruffing to show this fact. This they did not do. On the contrary, it appears from the evidence and finding of the court that after the application of this fund to said expenses there will remain unpaid $491.04 of said expenses. The evidence objected to could have no pertinency to the case, except to show that the Eatons had been paid all that was due to them at the time of their abandonment of the contract, and this was the tendency of the testimony thus erroneously admitted. But with this testimony in, the court could base no finding upon it, nor be influenced to a decision different from what it must have made if the testimony had been excluded. Clearly, the evidence had no influence over the conclusion reached, and was therefore harmless.

Many other questions are presented by appellants and appellee Ruffing for our consideration, all in a measure kindred to that already discussed. It would be unprofitable to discuss them separately, but, in our view of the case, they may be disposed of by an analysis and determination of the respective rights of Ruffing and appellants under their assignments from the Eatons.

In the first place, the contract to construct the gravel road was not an ordinary contract between individuals, but was a statutory contract with a municipality for a public work. Under the provisions of the statute authorizing the contract to be made, only eighty per cent of the value of the work could be paid until the whole work was completed and received by the board of commissioners (§7725 Burns 1908, Acts 1907 p. 572), and it goes without saying that if the contract was not completed the remaining twenty per cent would not become payable. Furthermore, the contract itself provided that if the work contemplated was not completed by January 1, 1905, the board, at its option, might take over the work and construct the road, after applying the amount due under the contract to the payment thereof, and if there remained an excess it should be charged to the contractors. The assignments to appellants and appellee Ruffing were made after January 1, and after the breach thereof, and at a time when the assignees knew that the board had the right, which they might exercise at any time, to take over the contract and complete the work.

It also appears that the contract was for a stated amount for the whole work, with payments of eighty per cent of the estimated amount of work done at certain intervals. Subsequent to the assignments, and before any further work was done, the contractors wholly abandoned the work, and the board of commissioners exercised their option under the contract and entered into an agreement with the appellees whereby appellees Frey, Frey & Taylor stepped into the shoes of the original contractors and agreed to complete the work in conformity with the original contract and for the remainder of the contract price, and pay not only the cost of completion but also the unpaid claims against the road theretofore contracted for by the Eatons in the construction of the work done by them; the remainder of the contract price,

after the payment of the stipulated amounts, to be paid to the Eatons or their assignees.

It must therefore be apparent that before appellants or appellee Ruffing, under the facts in this case, would be entitled to share in the fund in controversy, they or he must show that said fund is due to them, as assignees of the Eatons, after the work is completed and the whole cost of construction, as provided in the second agreement, has been paid.

In our view of the case, as heretofore expressed, it is unnecessary for us to consider the questions of priority of assignments. It is clear from the record that the fund in controversy did not accrue under the contract assigned to appellants and Ruffing, but did accrue under the contract of the board with Frey, Frey & Taylor. Appellants and appellee Ruffing knew of the limitations and infirmities of the contract when they took their assignments. They knew if there was then nothing actually due on the contract, or if it was abandoned, there would be nothing coming to them under it, and the assumption and completion of the work, and the disbursement of the money received therefor by appellees, put them in no worse position than they would have been had the same acts been performed by some one other than the Eatons. The contract of appellees Frey, Frey & Taylor authorized them to complete the road to the satisfaction of the board and pay all cost thereof. This would include necessary cost of a superintendent and an attorney. The court found that these expenditures were necessary, and there was evidence supporting each finding to which our attention has been called. Each conclusion of law was properly stated thereon, unless it be the third, awarding Ruffing $700 of the fund. We are not advised upon what theory this was awarded, and we have not considered it, since no cross-error is assigned thereon; neither have we considered the conclusions as to costs, since no question has been presented

thereon. We have considered the questions under appellee Ruffing's assignment of cross-errors along with appellants', since their interests are identical.

We find no reversible error. Judgment affirmed.